The next case United States versus Corbett. Okay, Ms. Devine or Devine, you tell me. Thank you, Your Honor. Good morning. May it please the court. Counsel. Good morning. There are two issues in this case and each is resolved by this court's precedent. The number of victims enhancement is controlled by United States versus Hall and I will begin with that issue. Ms. Corbett's mere transfer of personal identifying information without more did not use that information for purposes of the number of victims enhancement. Ms. Corbett's PSR cites directly to application note 4E to 2B1.1B2A, which in means of identification cases specifically defines a victim as either someone who suffered actual pecuniary harm, actual loss, or at issue here, had their PII or personal identifying information, quote unquote, used unlawfully. In United States versus Hall, this court looked at the same guideline, the same application note, and looked to the commission's commentary when they added this application note in 2009. Can I ask you just a quick question about the facts? Will you just help me make sure that I've got these straight? So Corbett would steal the patient identifying information, sell it to Weaver. Weaver would then give, sell it to someone else who in turn, pursuant to the plan, if executed, would stamp some new credit cards and file some fraudulent tax returns? Yes, Your Honor. So Ms. Corbett had access to HIPAA information through her healthcare job and that's exactly correct. She would be accessing the PII, obtaining it from her work, transferring it to Mr. Weaver, and then the overall plan and purpose was that Mr. Weaver would then transfer it again to these co-conspirators. That's sort of the flowchart. I've got the flowchart. That is exactly the flowchart, and those co-conspirators, Your Honor, would then be trying to commit bank fraud or tax fraud, open credit cards fraudulently, or file fraudulent tax returns. That was the purpose of this overarching conspiracy. In United States v. Hall, this court determined that mere transfer just like Ms. Corbett was doing in this case, without more, did not equate to use. It's a strikingly similar case. It is strikingly similar, Your Honor. Both women were healthcare employees with HIPAA access. Both women obtained and transferred that information to their co-defendant and both of them received about $200 for their efforts. There is some confusing language in the Hall opinion about the purpose of the conspiracy, but it seems to me it has to be understood as a case where the use has to be used as a means of identification, and that a mere transfer is not enough. That's got to be the holding. That is the rule as I read it, Your Honor, that the rule is necessarily use must include something more than transfer. This court in Hall did a few different things. It looked at the plain language of the guideline, the statutory construction of that guideline, and in doing so, it saw that— The ordinary meaning of the term use. Exactly, Your Honor. And that was the other thing this court did was look at Bailey. The Supreme Court specifically defined use in Bailey under the 924C context and said that it's some act of employment, some conversion of the thing to its use before you get to the enhancement. It does seem to me that this is an issue where you have to establish plain air, but it appears to me that you have. I'm having more trouble, though, at least for me. I can't speak for the others with your other argument. It seemed to me that with respect to the other enhancement, the arguments you make now about amount of loss, to me, don't work. You had made an argument in the district court about when your client joined the conspiracy and not being responsible for what had occurred beforehand, which I thought might have some reason to have pursued it. And Your Honor, we do agree that under any standard of review on the victim issue, our belief is we prevail because of United States v. Hall and the facts on the record here. As to the loss issue, it is our position that United States v. Washington controls. It is the controlling precedent from this court on that issue, and the reason that is is because Ms. Corbett, it is our position that she absolutely preserved this issue, and I understand the court's issue and I want to address it. When Ms. Corbett made, and she objected to the plea hearing. You made an argument that the Florida Hospital's losses were not reasonably foreseeable. Correct. The problem with that, it seemed to me, though, is that you didn't object to the PSI. She objected to the pre-sentence report calculation of the guideline loss amount, and she did so in a way that cited specifically to Chapter 1 of the guidelines, 1B1.3's relevant conduct provisions and that reasonably foreseeable language in that. So much so that probation, when they wrote the addendum to the PSR, responded to that and specifically talked about why they believed it was reasonably foreseeable under relevant conduct provisions to apply the full loss amount to Ms. Corbett. Under Washington . . . I read the record as you having made slightly different arguments below. I mean, they might vaguely fit under the reasonable foreseeability umbrella, but you were really making sort of legal arguments below, it seems to me. Right. And Washington says you've got to contest it factually, which I'm not . . . that's certainly the argument you're making now, but it didn't seem to me the argument you were making then. So we, early and often, it is our position Ms. Corbett told the government early and often starting at the plea hearing that loss was an issue here. Nobody ever contested, including us, there's no objection to the fact that Florida Hospital paid out $232,000 some odd dollars. But the issue here was always how much of that was attributable to Ms. Corbett. And so under Washington, we believe that what we did was enough to trigger factually the government to come in and do something. So as this court said in Washington, spreadsheets, witnesses would be ideal. That's the same here. The summary chart and the statements from government counsel alone were not sufficient to address because Ms. Corbett was only involved for a 10, less than 10 month period in a two plus year conspiracy. What did those numbers represent? A spreadsheet would have told us how they were accrued.  Under Ms. Corbett and the co-conspirator's conduct, Florida Hospital incurred costs associated with identifying and notifying patients whose individually identifiable health information was viewed without authority by Weaver and his co-conspirators. The loss incurred by Florida Hospital as a result of this conduct is $232,068.64. And you didn't object to that? Your Honor, we didn't object that they paid out that amount of money. Or to the causation issue either, to the facts. You didn't raise a factual objection to that. So it is our argument that when Ms. Corbett's trial counsel objected to the guideline enhancement, that that triggered the government to bring in certain evidence to prove up that guideline enhancement because facts need to be presented to show, as it pertains to Ms. Corbett's activity and this conspiracy, how that loss amount was accrued by Florida Hospital. And the district court, we are arguing, should have done, I think, three things. First, especially . . . A reasonably foreseeable argument just wasn't made. It was made under a 1B1.3 context, Your Honor, in that under the PSR objections and probation's response that the government should have responded with evidence and the court should have made a stint in this two-plus-year conspiracy warranted $232,000 worth of loss. We still, to this day, do not know where those numbers come from precisely because all we have is a summary charted in the government counsel's statements. And so the fact that that issue, at a minimum, was brought up in the PSR objections by trial counsel should have triggered at least that factual inquiry by the court. And the demand for the government to do specific and reliable evidence as to that issue. And so we would ask the court on this loss issue to do what it did in Washington, which is require the government to do what we're asking it should have done, which is bring in evidence. And under Washington, this court determined that it had a chance to do that. It did not do that. And it remanded the case without that enhancement. Here that's a 10-level swing for Ms. Corbett. Now she is due to be released in three months, and so it is essentially a time-served situation for her if this court remands this case without 10 levels. But we are asking the court to do that even though we are close to time served anyway because we believe the government should have done something to show factually to the court why, at least under Chapter 1, this whole $232,000 was attributable to her, that she was there for less than 10 months in this conspiracy. I see my time is running out. I'll reserve the rest for rebuttal. Thank you, Your Honors. Thank you, Ms. Devine. Ms. Cashore? Good morning, Your Honors. My name is Deepthi Cashore. I'm here on behalf of the appellee, the government in this case. May it please the court. The district court did not plainly err in concluding that there were 10 or more victims under the facts of this case. Now going directly to Judge Pryor's question about the controlling effect of Hull, the rule from Hull is that use has a definite meaning that is different from the meaning of transfer and that for purposes of the application note, information is used when it's employed towards implementing the purpose for which it was obtained. By the same token, it's not used when it's merely obtained in transfer in a way which would not further the purpose of the conspiracy. This case is a lot like Hull, isn't it? Absolutely, Your Honor. I mean, there are certain material differences, which I can go into right now. I mean, in the Hull case, the court didn't really address what it meant, whether the facts of this case, which are different in the sense that she not only accessed the information from the hospital's database, but she took steps on that information to commodify it and going to Judge Newsom's question about the chain of events here. That's not accurate, Your Honor, or I would sort of dispute the characterization of the fact that there was ever an intent to print fraudulent credit cards or anything. I mean, from the perspective of Hull and her co-conspirator, they didn't care what that information that was stolen and commodified in the form of face sheets that targeted certain vulnerable victims, people over the age of 40, people who were very young. They didn't care what that information was then separately used for. And of course, if there were separate acts that were part of the conspiracy, then those would be relevant to the analysis. But here, the whole... That's good. When you see me inhale and you stop, that's impressive. I've been a lawyer. I know how that goes. So I mean, one question I have, a concern I have about the messiness of Hull, which Judge Pryor was mentioning earlier, is this purpose of the conspiracy language leads to look like the indictment in this case, where you conveniently, strategically, whatever, say the purpose of the conspiracy was, and you say, oh, it was just to steal and transfer, never mind what was going on sort of downstream. And I worry a little bit that we might be sort of reverse engineering indictments to meet this victim, this number of victims enhancement. Well, Your Honor, I take the point that sort of the absurd consequence of Hull, and it's a problem that Hull itself created, in that the way that a crime is charged may have an effect on whether the enhancement applies. But remember that this is a two-level enhancement. If the crime were charged in a different way, a different crime would apply, aggravated identity theft, for instance. In Hull itself, it was a conspiracy to commit bank fraud that was charged in addition to the wrongfully obtaining and transferring information crime. So in the sense that Hull's reasoning does sort of rely, it does rely on the purpose of the crime because Hull, the panel in Hull, needed to find a way to give use a meaning that distinguishes it from transfer. Now we concede that had the information just been transferred in this case, had the facts of this case shown that all she did with the information was, for instance, put a USB drive into the hospital's computer, download everything, and just transfer it to a co-conspirator, then Hull would control. But that's not the facts of this case. In this case, she did more than that. She accessed the information. She compiled within that information that the individual patients who were going to be more desirable to a potential third party who might be interested in buying the information. She commodified it in a way that it would have street value. She printed face sheets with that information, face sheets that included the social security numbers, dates of birth. And then she provided that to her co-conspirator in exchange for money. The entire purpose of their conspiracy was to take that information- What she did was transfer it, though. I mean, she didn't use it as a means for identification. No one, I mean, it wasn't used in the meaning that we attributed use to in Hull, right? Well, in Hull, the court, or a panel of this court said that the- I was on the panel. I know it. Oh, okay. Well, then, you know, so Hull, again, looking to the ordinary and natural meaning of the word use and relying on the Supreme Court's definition in Bailey, Hull said that use means to convert to one's service, to employ, to avail oneself of, and to carry out a purpose- Employ for what? As a means for identification, right? I'm sorry, Your Honor. To employ it for what purpose? To employ it for an unlawful and unauthorized purpose. So you have to consider the word use in the context of the rest of the guideline. It's use for an unlawful or unauthorized purpose. So in a given case, whether the use is for an unauthorized or unlawful purpose will definitely, or will necessarily be a fact-dependent question. In Hull itself, the crime that was charged, again, was this, the purpose, the illegal purpose was a scheme to obtain fraudulent credit cards. There was an organizer of the scheme who was also charged in that case who directed Hull to obtain that information and then compile it for purposes of obtaining the fraudulent credit cards. We said in Hull, though, that when the conspirators used 12 patients identifying information to obtain fraudulent credit cards, at that point, those 12 individuals became victims, right? Correct, Your Honor. Now why? Because then their means of identification were being used as means of identification. Yes, Your Honor, but- But to view that statement in isolation from the context and the facts of the case would then mean that Black was decided incorrectly because Black, again, that was, of course, an unpublished decision, but the court there applied Hull, applied Hull's reasoning and said there- Maybe we need a published opinion to clear it up. I'm sorry, Your Honor? Maybe we need a published opinion to clear it up. Perhaps, Your Honor, but at the very minimum, the fact that Black was decided after Hull shows that there was sufficient ambiguity in Hull such that a clear error wasn't made here. I mean, there was room for doubt given the reasoning in Hull that another panel of this court in Black found that a person doesn't necessarily, or a person becomes a victim at a different time depending on the factual circumstances of the particular offense. Now, and that makes sense. That makes sense in the sense that a victim is defined in relation to a crime. You're a victim of a healthcare fraud scheme. Another panel may have misunderstood a precedent doesn't mean though that when there is a precedent on point and when the holding is at least clear to us that there wasn't a plain error if the precedent wasn't followed. Your Honor, I think at the very minimum it shows that there is some ambiguity in the decision and that's sort of the question, whether there is room for doubt. An error is plain if controlling precedent- Insofar as we're able to discern what the holding is, we're bound to follow it and if what the district court did is inconsistent with our holding and a published opinion then it's plain error. Correct, Your Honor, and there is, as you mentioned, there is confusing language in Hull and perhaps it is important for this court to clarify it. Our point though is that a straightforward application of Hull's reasoning, which Hull's decision itself makes apparent is essential to its holding in the sense that Hull over and over referred to the purpose of the conspiracy. Let's say we vacate the sentence and we send it back. This is not an objection that had been made in the district court as I see it. I think you're right that this was raised for the first time on appeal and we review it for plain error, but let's say that we think that it is plain error. You would be then enabled, you would be allowed to put on evidence about victims having their means of identification being used as means of identification, right? Correct, Your Honor, though of course our position is that a remand wouldn't be appropriate here in the sense that it would give the defendant a second bite at the apple. I mean she didn't raise the objection before. She didn't raise Hull before. She never argued that the people's information who was stolen, that wasn't used . . . Their argument would be you're going to be given a second bite at the apple, but because the argument was raised for the first time on appeal, I thought that was probably okay in this context. Certainly, Your Honor, and that's of course within the court's power to do. But again, there's the other argument which I'll briefly address, which this court is very familiar with, Melina Martinez. And I think that even if that two-level enhancement were improperly applied, the record shows that the court imposed a sentence that was completely untethered, untethered from the guidelines range. The Supreme Court specifically instructed that there are instances in which the record in a case, which can include the district court statements, would show that the court issued . . . The probation officer's recommendation of a variant sentence was important in the sentence that it ultimately imposed. And I think that if you follow that logic and take away this enhancement, that it conceivably would have changed the probation officer's recommendation and might then have affected the district court's decision too. Correct, Your Honor. I take the point, it's actually a very close call, I think, in this case. But I think what's dispositive, or at least what's very persuasive, is that the court . . . What is clear from the record is that the court made up its mind to issue a sentence of incarceration instead of a request for probation. And then it issued a very specific sentence of one year and a day. And a sentence of a year and a day, as this court is probably familiar, those issues come up in the context of 18 U.S.C. 3624B. Prisoners who serve more than one year can receive credit for time served. And so that's the main driver behind one year and a day sentences. Nothing in the probation officer's recommendations or in Corbett's request would have suggested a year and a day was the appropriate sentence to give, but the court decided that a year or a sentence of incarceration was the appropriate one over a term of probation, given the seriousness of the offense, and that a year and a day would be the appropriate one, presumably to give her credit for good time served. Now I have just a couple of more minutes, and if the court has no more questions on victim's enhancement, I'll turn to the amount of loss. The one point that I wanted to raise is that she herself, Corbett herself, characterized all of her objections as legal ones in multiple places in the record. And the objection now is a factual one. Yes. Yes, Your Honor. So and the reason why that matters is that she didn't preserve any argument concerning the adequacy of the evidence, which appears to be the only real argument that she's making now on appeal. So the court has no further questions. I thank the court for its time. Thank you. Ms. Define, you have five minutes. Thank you, Your Honor. Can I ask you a quick question just as you get started? You said earlier twice, I think you said, underhaul, it's got to be more than mere transfer. It's got to be something else. So I'm kind of curious about what the something else is, because I take it that it's not your position that in order to be used, the conspiracy, let's say, has to have reached its ultimate end. There have to have been credit cards stamped and tax returns filed. So what's the something else between transfer and ultimate success, or is there some way station in there? That's a good question, Your Honor, and I think what Hall says is, and the way the court's the question in cases since then has been, if it's just possession, if it's just transfer, that answers the question. And so what is the line beyond that? And Black is the closest thing we get to maybe that gray area, because what Mr. Black did, he possessed document-making devices so that he could get this PII into his device and make a credit card with it, is my understanding. I think the court's use of Bailey is instructive here, because it's that act of employment or the conversion of the thing. So I think that's where this court and Hall, if I may presume to have conjecture about what it meant. Talk to him. I didn't write it. I just joined it. Is that the way this court looked at Bailey and used those definitions is instructive because when the defendant actually takes that PII and employs it for some other purpose or takes that PII and converts it to the other use, that's where the line is. So it happened . . . I mean, if you're looking at this from the victim's perspective, it seems to me that the victim would think that their means of identification has been used when it's been used as a means of identification. Yes, Your Honor. And it's our position that United States v. Hall is very clear that the rule is very clear on this and that transferring something for a fraudulent purpose is not using something for a fraudulent purpose. And this court has applied it in that way, I would argue even in black, again and again. And the record here in our case, I would argue, is clear factually because we have the conspiracy charged as happening with others other than Mr. Weaver and Ms. Corbett. We have it pled factually as including others. We have a PSR unobjected to offense conduct that includes co-conspirators who are believed to have been doing further criminal acts with this PII. And most importantly, perhaps, at the sentencing hearing for Ms. Corbett, the district court actually asked the government, do you have any information that any of this stolen identification has been used to defraud victims? That direct question was asked of the government, and the government responded in the negative. And they said no. And they specifically said we have no exacting evidence that a specific occurrence . . . that And it seemed to me the critical thing was that when the district court overruled the objection it said, I think there are a lot more than ten victims. I think anybody's information who was stolen is a victim. Yes, Your Honor. And as a matter of law, that's an incorrect statement. And we would ask this court, and I know there's some discussion during the government's presentation here about what should happen on remand. And our position is that because of that statement, at the sentencing hearing for Ms. Corbett, that we have no exacting evidence that any of this was used, that they should not be able to go back on remand and now try to prove that. When their own statement at the sentencing hearing, in this case on the record before this court, was that they have none, that they have no hard evidence of that. So we would specifically ask if this court were to remand to . . . It seems to be the problem is that the objection that was made below was not an objection. There was no argument made based on the meaning of the word used. And as we've said, under any standard of review, we're asking this court to find, if this court finds plain error, that there has been error because as a matter of law, that statement by the judge is incorrect. If we were to find that the objection was not preserved and therefore our review was for plain error, I understand your argument with which I have sympathy that there was plain error here, but that would also mean, wouldn't it, that the district, that the government would be given the opportunity to present that evidence. And this court may decide that it does. What I'm asking this court to do is look at the record here and look at their own statements at that sentencing hearing and find that they've already made that representation to the court, that they have no evidence of that. So that's what we're asking this court to take into account today. Just addressing a couple other points that came up during the government's presentation, the commission in 2009, we haven't talked about this yet, but they were in 2009 in their commentary, it appears, I think, to this court in the Hall decision and to me, that they were adding this specifically to punish more harshly people who were actually using the PII. And I think that's an important consideration because Ms. Corbett did not do that. Thank you, Ms. Devine. Thank you, Your Honor. We have your case. We'll move to the third one.